```
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00034-MR
```

| | |
|---|---|
| **RAGS TO ROYALS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| **RAGS 2 ROYALTY RESCUE, INC.,** ) | |
| and **ROBIN UNDERWOOD BOWDEN,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Amended Complaint for Lack of Venue [Doc. 21] and Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 26].

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

On February 13, 2018, Plaintiff Rags to Royals ("Plaintiff") filed this action against Defendants Rags 2 Royalty Rescue, Inc., ("Defendant Royalty") and Robin Underwood Bowden ("Defendant Bowden") (collectively, "Defendants"), alleging trademark infringement, false designation of origin, infringement of registered mark, and cybersquatting. [Doc. 1 at ¶¶ 34-46, 47-59, 60-72, 74-8].  The Defendants filed a motion to

dismiss the Complaint for "lack of venue." [Doc. 10]. Thereafter, the Plaintiff filed a motion to amend the Complaint, which the Court granted. [Docs. 13, 16]. In response, the Defendants filed the present motion to dismiss the Amended Complaint for "lack of venue." [Doc. 21]. In turn, the Plaintiff filed a motion to again amend the Amended Complaint. [Doc.26].

According to the Amended Complaint, Plaintiff is a non-profit corporation organized under the laws of the State of North Carolina with a business address in Buncombe County, North Carolina. [Doc. 1 at ¶ 1]. The Plaintiff operates an animal rescue and adoption service. [Id. at ¶ 10]. Defendant Royalty is a non-profit corporation organized under the laws of the State of North Carolina with a business address in Cumberland County, North Carolina, which is in the Eastern District of North Carolina. [Id. at ¶ 2]. Defendant Robin Underwood Bowden is an individual residing in Cumberland County, North Carolina. [Id. at ¶ 3, 18]. Defendant Bowden is the individual who formed the Defendant Royalty corporate entity that operates an animal rescue and adoption service. [Id. at ¶¶ 18-9].

On November 22, 2016, the Plaintiff obtained a federal trademark registration, Registration No. 5086545, for "RAGS TO ROYALS" in connection with:

> Adoption services for domestic animals; Animal adoption service, namely, arranging for dogs and

2

> cats from shelters to be placed in homes; Animal rescue services, namely, arranging for the adoption of rescued animals; Providing a web site featuring listings and photographs of pets available for adoption and related information concerning pet adoption; Providing information about pet adoption.

[Id. at ¶ 11; 20-2 at 1]. The Plaintiff alleges that it adopted the "RAGS TO ROYALS" mark in February of 2016, having begun its animal rescue and adoption service in 2011. The Plaintiff also alleges that it has expended considerable time and money engaging a large and dedicated following, including nearly 90,000 Facebook users from around the world. [Id. at ¶ 13].

In May of 2017, Defendant Bowden created a Facebook page using the "RAGS 2 ROYALTY" mark and posted for adoption a dog named "Piper" for which she was providing animal rescue and adoption services. [Id. at ¶¶ 16-7].[1] In June of 2017, Defendant Bowden formed Defendant Royalty as a North Carolina non-profit corporation and continued to operate the Facebook page utilizing the "RAGS 2 ROYALTY" mark. [Id. at ¶¶ 18-9]. In January of 2018, the Plaintiff discovered the Defendants use of the "RAGS 2 ROYALTY" mark and requested that the Defendants cease all use of the of the "RAGS 2 ROYALTY" mark due to its confusing similarity to Plaintiff's "RAGS TO ROYALS" mark. [Id. at ¶¶ 22, 28]. The Defendants did not cease use of the

---

[1] A separate dog named "Piper" was the original inspiration for the Plaintiff's animal rescue and adoption service.

"RAGS 2 ROYALTY" mark. Instead, the Defendants filed a trademark application for "RAGS2ROYALTY RESCUE" and launched a website utilizing the "RAGS 2 ROYALTY" mark in the URL. [Id. at ¶¶ 25-9].

The Plaintiff alleges that the Defendants' use of the "RAGS 2 ROYALTY" mark infringes on Plaintiff's mark in that it is likely to cause confusion between the two respective animal rescues and that confusion has already occurred. [Id. at ¶¶ 30-31]. Specifically, the Plaintiff alleges:

> On or about August 27, 2017, Defendants hosted an adoption event in or near Fayetteville, North Carolina. One of the participants at that event posted photographs on Facebook of the event and tagged Rags to Royals in the post, stating, "Rags To Royals Rescue is here with puppies too." In fact Rags to Royals was not in attendance at the event. Defendants were promoting Adoption Services at the event.

[Id. at ¶ 31]. Despite Plaintiff's requests, the Defendants have declined to cease use of the "RAGS 2 ROYALTY" mark, resulting in the filing of this action. [Id. at ¶ 33].[2]

The Defendants now move to dismiss the Plaintiff's Amended Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for "lack of venue." [Doc. 21]. In response to the Defendants' Motion, the

---

[2] During the litigation of this matter, the Defendants have changed their Facebook page and website to "Mutts 2 Majesty." [See Docs. 23, 25].

Plaintiff filed a Motion for Leave to File Second Amended Complaint [Doc. 26], which the Defendants oppose [Doc. 30]. Having been fully briefed by the parties, these motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss for Improper Venue

Defendant's curiously entitle their motion as one to "Dismiss … for Lack of Venue." [Doc. 21]. The gist of Defendants' motion, however, is not that this case <u>lacks</u> venue (it obviously does not), but rather that Plaintiff has filed it in an <u>improper</u> venue. Thus, the Court construes the Defendants' motion as one pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a Court may dismiss an action for improper venue. In reviewing a Rule 12(b)(3) motion, the Court views the facts presented "in the light most favorable to the plaintiff." <u>Aggarao v. MOL Ship Mgmt. Co., Ltd.</u>, 675 F.3d 355, 366 (4th Cir. 2012) (citing <u>Global Seafood Inc. v. Bantry Bay Mussels Ltd.</u>, 659 F.3d 221, 224 (2d Cir.2011)). The Court may "freely consider evidence outside the pleadings" when ruling on a Rule 12(b)(3) motion. <u>Sucampo Pharm., Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 550 (4th Cir.2006). "A plaintiff is

obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." Aggarao, 675 F.3d at 366 (4th Cir. 2012) (citing Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir.2004)). A case filed in an improper venue must be dismissed, or, if in the interests of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a).

### B. Motion for Leave to Amend

The disposition of a request to amend is within the discretion of the Court, but leave shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are "typically granted in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed." Harless v. CSX Hotels, Inc., 389 F.3d 444, 447 (4th Cir. 2004). However, if a proposed amendment would be futile, the Court should deny the request. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

## III. DISCUSSION

### A. Venue

Generally, a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which

6

the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). "[I]t is possible for venue to be proper in more than one judicial district." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).

Here, the Plaintiff asserts that venue is proper under the second subsection of Section 1391(b) because a "substantial part of the events or omissions giving rise to the claims alleged in th[e] [Amended] Complaint occurred in th[e] [Western] District [of North Carolina]." [Doc. 20 at ¶ 7].

The events Plaintiff alleges that give rise to this claim consist of the Defendants creating a Facebook page using the "Rags 2 Royalty" mark [Doc. 20 at ¶ 16]; forming the Defendant corporation using that mark [Id. at ¶ 18]. Performing services similar to those provided by the Plaintiff [Id. at ¶ 20-21]; submitting a trademark application for a mark including the "Rags 2 Royalty" term [Id. at ¶ 25]; launching a new website including that term in the URL [Id. at ¶ 28]; all "in the same channel of trade" as Plaintiff [Id. at ¶ 29]; causing confusion between Plaintiff's and Defendants' marks [Id. at ¶¶ 27, 29-30].

7

Nowhere, however, does Plaintiff allege that any portion of these actions occurred in the Western District of North Carolina. Quite the contrary, Plaintiff alleges that the Defendants and their actions have been located at all relevant times in and around Fayetteville/Cumberland County, NC, which is in the Eastern District of North Carolina. In fact, the only specific event Plaintiff alleges in the Amended Complaint was an "adoption event" that took place on August 27, 2017 in Fayetteville.

Considering only the allegations of the Amended Complaint, the Plaintiff appears to rely entirely on the allegation that the Defendants' actions occur "in the same channels of trade" as Plaintiff's activities. Plaintiff does not, however, allege where those "channels of trade" are. More importantly, in analyzing where the "events and omissions giving rise to the claims … occurred" in the context of an intellectual property matter[3] one looks to the acts committed by the allegedly offending party. See Jeffers Handbell Supply, Inc. v. Schulmerich Bells, LLC, 2017 WL 3582235, at *6–9 (D.S.C. 2017); Flexible Benefits Council v. Feltman, No. 1:08-cv-371, 2008 WL 2465457, at *7 (E.D. Va. June 16, 2008). Plaintiff makes no allegation in the

---

[3] Generally, venue for patent and copyright infringement cases is governed by 28 USC §1400, but all other intellectual property cases still fall within §1391

Amended Complaint that the Defendants did anything outside the Eastern District of North Carolina.

In response to the Defendants' Motion, Plaintiff attempts to supplement its record regarding actions of the Defendants, by asserting that the "Defendants clearly have more than minimum contacts in the Western District." [Doc. 23 at 4]. Minimum contacts, however, are necessary to establish in personam *jurisdiction*, not venue. See e.g. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–94, 100 S. Ct. 559, 564–66, 62 L. Ed. 2d 490 (1980); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). Proper venue requires that "a substantial part of the events or omissions giving rise to the claims" occur in the district. 28 U.S.C. § 1391(b)(2). Plaintiff has shown nothing to indicate that such a "substantial part" occurred anywhere other than the Eastern District of North Carolina. While the propriety of venue was formerly analyzed by a "weight of the contacts" test, this was abandoned with the 1990 amendments to Section 1391. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) (citing Ciena Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir.2000)).

Plaintiff attaches some exhibits to its Response to the Defendants' Motion tending to show that the Defendants have some slight contact with the Western District of North Carolina. Defendants placed a dog named Pharao "in the NC Mountains." [Doc. 23-7]. When Defendants conducted an online auction to benefit their efforts, one woman from Jefferson, NC (in the Western District of North Carolina) signed up. [Doc. 23-12 at 2]. Defendants also offered for adoption a dog named Keno, that was being temporarily boarded in Granite Falls, NC (in the Western District of North Carolina).[4] [Doc. 23-13]. Plaintiff only argues that these exhibits show that the Defendants "deliberately seek to serve residents of this district." [Doc. 23 at 4]. These random and incidental contacts with the Western District of North Carolina, however, fall far short of showing that a *substantial* part of the *events … giving rise to the claims* occurred in the Western District of North Carolina. In fact, the exhibits Plaintiff presents also show that Defendants' actions have some incidental contact with Indiana, Michigan, Arizona, California and more, [Docs. 23-12, 23-13], and Defendants' website is presumably accessible in all 50 states. Such incidental contact, however, do not lead to a conclusion that the Court has personal jurisdiction, much less

---

[4] The Court will take judicial notice that Jefferson, NC is in Ashe County, which is in the Western District of North Carolina and that Granite Falls, NC is in Caldwell County, NC, also in the Western District of North Carolina.

establish that there is proper venue, in all such locations. See e.g. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (stating that, in the context of personal jurisdiction, "[i]f [the Court] were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction… [t]he person placing information on the Internet would be subject to personal jurisdiction in every State").

Viewing the facts presented in the light most favorable to the Plaintiff, and even considering the facts mentioned by the Plaintiff in its Response to Defendants' Motion that were not pleaded, the Plaintiff has not made a prima facie showing that a substantial part of the events about which Plaintiff complains occurred in this district. Therefore, venue is not proper in the Western District of North Carolina.

### B. Section 1406(a)

Having determined that venue is not proper in this district, the Court now turns to the question of the appropriate remedy. Section 1406(a) of Title 28 of the United States Code provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division

in which it could have been brought." Where improper venue has been found, the Court has the discretion to dismiss the action or transfer it to a forum in which the case could have been brought. See id.; see also Sewell v. Commodity Futures Trading Comm'n, PX-16-2457, 2017 WL 1196614, at *4 (D. Md. Mar. 31, 2017) (stating that, under § 1406(a), "[w]hether a transfer would be in the interest of justice is committed to the discretion of the trial court"). "[T]ransfer is 'generally considered to be more in the 'interest of justice' than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district.'" Simpson Performance Prod., Inc. v. NecksGen, Inc., No. 5:16-CV-00153-RLV, 2017 WL 3616764, at *8 (W.D.N.C. Aug. 23, 2017) (quoting Nation v. United States Gov't, 512 F.Supp. 121, 126–27 (S.D. Ohio 1981)).

Here, the record reflects Defendant Bowden and Defendant Royalty are residents of the Eastern District of North Carolina pursuant to Sections 1391(c)(1) and 1391(d). [Docs. 20 at ¶¶ 2, 3; 22 at 3]. Further, a substantial part of the events and omissions giving rise to this action occurred in the Eastern District of North Carolina. Therefore, this action could have been properly brought in the Eastern District of North Carolina under Section 1391(b)(1) or (2).

As such, the Court, in its discretion, finds in the interest of justice that transfer of this matter to the Eastern District of North Carolina, wherein the Defendants reside, significant underlying events took place, and venue will be proper, is appropriate.

**C.      Motion for Leave to Amend**

In apparent attempt to establish proper venue, the Plaintiff moves for leave to amend her Amended Complaint in order to add a new party and allege a state law defamation claim against an additional Defendant, Jamie Caldwell White, who is alleged to reside in the Western District of North Carolina. This motion raises a question of whether Jamie Caldwell White is a necessary party per Rule 19 of the Federal Rules of Civil Procedure or whether joinder of such party is permissively allowed per Rule 20 of the Federal Rules of Civil Procedure. The Court having determined that venue is not proper in the Western District of North Carolina, this question will be left for the transferee court. Therefore, the Plaintiff's Motion for Leave is denied without prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss for Lack of Venue [Doc. 21] is **GRANTED**, and this case is hereby **TRANSFERRED** to the Eastern District of North Carolina.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. 26] is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

Signed: February 22, 2019

Martin Reidinger
United States District Judge